UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 11-70-GWU

SCOTT GILL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

11-70  Scott Gill

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

11-70  Scott Gill

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

3

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Scott Gill, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of neuropathy in the right lower extremity status post an anterior cruciate ligament (ACL) tear and arthroscopy; coronary artery disease, status post stent placement and coronary artery bypass grafting; and diabetes mellitus.  (Tr. 56).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Gill retained the residual functional capacity to perform a significant number of light and sedentary jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 58-63).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 41, high school education, and work experience as a produce

manager and delivery driver could perform any jobs if he could lift 20 pounds occasionally and 10 pounds frequently, was limited to standing and walking two hours in an eight-hour day with the option of alternating sitting and standing every hour, and also had the following non-exertional restrictions. He: (1) needed to avoid kneeling and climbing ladders, ropes, and scaffolds; (2) could occasionally crouch and crawl; (3) could frequently balance, stoop, and climb ramps and stairs; (4) could occasionally push and pull with the right foot and leg; and (5) was limited on working around whole body vibration, hazardous machinery, and dangerous heights.  (Tr. 45).  The VE testified that there were jobs as a cashier/counter clerk/counter salesperson, bench assembler, and sorter and packager which such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 45-48).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Gill alleged disability beginning March 6, 2006 due to a torn ACL and muscle and nerve damage in his right leg, which had occurred when he was crushed between two forklifts at work.  (Tr. 18, 144).  He also had undergone a coronary artery bypass two months after the accident, and also suffered from diabetes and high blood pressure.  (Tr. 182).  He admitted at the administrative hearing before the ALJ that his heart problem had largely resolved, however.  (Tr.

23).  He said it had been "tough" getting his blood sugar under control, but did not describe any specific restrictions related to diabetes.  (Tr. 24).  Mr. Gill also asserted that he was depressed and anxious and had been on medication (Tr. 182) but apparently had no other specific treatment.  His wife testified that he had moments of depression with good and bad days, but these bad days occurred once a month or every other month.  (Tr. 38-39).  Mr. Gill described spending most of the day in a recliner, but he was able to attend church Wednesdays and Sundays and volunteered to help in the sound department.  (Tr. 24).  Following his application, he had broken his right ankle and right arm in a fall in the church bathroom.  (Tr. 19-20).  He ascribed this to his lack of control over his right leg.  (Tr. 21).  He also had low back pain.  (Tr. 22).

Medical records in the transcript confirm that Mr. Gill had a crush injury to his right thigh and EMG/NCV testing in 2007 confirmed nerve injury and potential muscle injury.  (Tr. 210, 218-19).  Dr. Stephen Ryan, a neurologist, said that the nerve injury was non-surgical and recommended the medication Gabapentin, although it appeared that Mr. Gill was not able to obtain it.  (Tr. 209-10, 212).

Since an MRI of the right knee also showed a probable ACL tear, Dr. Darren Johnson performed a reconstruction of the ligament in September, 2006.  (Tr. 227). On follow-up, Dr. Johnson commented that the knee was stable, but the main concern was atrophy of the entire extremity as well as Mr. Gill's overall

cardiovascular fitness, since he had recently undergone bypass surgery. (Tr. 243). He emphasized that Mr. Gill needed to work aggressively in therapy every day. (Id.). A month later, on December 18, 2006, Dr. Johnson said that Mr. Gill was making progress, but still had weakness in the entire lower extremity and still needed to work aggressively. (Tr. 242). At Mr. Gill's last visit to Dr. Johnson, on April 16, 2007, the physician commented that he had been behind in therapy ever since his surgery, was mostly non-compliant with his home exercise program, and his leg was getting weaker and losing girth. (Tr. 240). He had "failed" physical therapy and the physical therapist recommended that it be discontinued. Dr. Johnson concluded that Mr. Gill was at maximum medical improvement for his knee, and in terms of restrictions would have to seek an independent medical examination from another source. (Id.).

It appears that the plaintiff obtained the independent medical examination from Dr. Michael Heilig, an orthopedist, in May, 2007. His examination showed a decreased range of motion of the right knee in comparison to the left and significant quadriceps atrophy. (Tr. 306). There was pain across the interior aspect of the knee along with numbness and decreased two point discrimination along the lateral thigh correlating to the L5 nerve root. (Id.). Dr. Heilig stated that he agreed with Mr. Gill's "current work restrictions" of lifting no more than 15 pounds, no squatting, and no prolonged standing without a break. (Tr. 307).

In November, 2007, Mr. Gill was evaluated by Dr. Robert Hosey, in the University of Kentucky Medical Center's Sports Medicine Department, for complaints of low back pain radiating down his right leg. (Tr. 238). Dr. Hosey's physical examination showed tenderness to palpation in the sciatic region on the right side, but with full flexion and extension. There was significant quadriceps weakness on the right and pain with straight leg raising, along with subjectively decreased sensation over the quadriceps and thigh on the right. He could walk without any significant problems. Dr. Hosey ordered an MRI of the lumbosacral spine, which was obtained on December 3, 2007 and interpreted by the radiologist, Dr. Steven Goldstein, as showing "mild" central canal and lateral recess stenosis, most pronounced at L4-5, with no evidence of a disk herniation. (Tr. 237). On follow-up, Dr. Hosey noted that Mr. Gill's examination was unchanged, and interpreted the MRI as showing "some small disk protrusions at L4-5 with some mild stenosis at L4-5 as well," but without any "large herniated disks." He recommended a consultation with a pain management clinic, but did not provide any functional restrictions. (Tr. 239).

Dr. Heilig evaluated Mr. Gill again on January 7, 2008, and this time also reviewed the December 3, 2007 MRI, which he described as showing "disk protrusion at L4-5 with lateral restenosis bilaterally." (Tr. 316). His physical examination of the leg was largely unchanged, and he noted a positive straight leg

raise on the right.  (Id.).  He reiterated the same limitations of lifting no more than 15 pounds, no squatting, and no standing without a break.  (Tr. 317, 320).

The only other functional capacity assessment by an examining and/or treating source was completed on April 15, 2009 by a physician with an illegible signature.  (Tr. 387-88).  It merely states that the plaintiff's ability to stand on his ankle, walk, and lift was "limited" to an unspecified extent.

Dr. Carlos X. Hernandez, a non-examining state agency physician, had reviewed the evidence as of November 28, 2007 and concluded that Mr. Gill could perform "medium" level exertion with no climbing of ladders, ropes, or scaffolds and occasional crouching and crawling.  (Tr. 285-91).  He indicated that there was no treating or examination source statement regarding physical capacities in the file, meaning that he did not have the opportunity to comment on Dr. Heilig's restrictions, or those of the illegible physician.

In discussing the evidence, the ALJ stated that while he took Dr. Heilig's assessment into consideration, he would give it only limited weight "as it appears to be partly based on an interpretation of an MRI to show a back injury that is not documented in the MRI report prepared by Dr. Goldstein."  (Tr. 60).  The ALJ discounted the other functional assessment because of the anonymity of the physician in the absence of evidence that Mr. Gill's ankle injury affected him for the minimum twelve-month period.  (Id.).  He went on to criticize the plaintiff's credibility

because of a pattern of non-compliance with medical treatment and found that his activities of attending church and working in the sound department, performing some child care activities, and living in a house which required him to climb stairs to the bedrooms were inconsistent with his allegations. (Tr. 61).

The plaintiff takes issue with a number of the ALJ's findings. First, he asserts that it was error not to find his depression, back pain, neuropathy, and right ankle injury to be "severe" impairments, although much of the evidence that he cites in support was submitted to the Appeals Council and not even available to the ALJ. In any case, the Sixth Circuit has held that it is not reversible error to omit a finding that certain impairments are "severe," where other impairments have been found and the ALJ goes on to consider all of the evidence. Maziarz v. Secretary of Health and Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

The plaintiff also makes a general argument that he would meet the Commissioner's Listings of Impairment 1.02A, 9.08 and 4.04C. However, as discussed in the defendant's brief, he failed to present specific medical findings that satisfy all of the criteria of the Listings as required by Sullivan v. Zebley, 493 U.S. 521, 530-32 (1990). Commissioner's Motion for Summary Judgment, Docket Entry No. 11 at 9-12.

Finally, the plaintiff asserts that the ALJ erroneously rejected the opinion of Dr. Heilig. He notes with some justification that the ALJ's assertion that there was

11-70  Scott Gill

no support for Dr. Heilig's interpretation of the lumbar MRI scan, as showing a disk protrusion, may be somewhat questionable in light of Dr. Hosey's similar interpretation of the same report.[1]  The plaintiff is also critical of the ALJ's summary of his daily activities as being one-sided.  The problem for the plaintiff, however, is that no physician indicated greater restrictions than Dr. Heilig, and even if this source were given controlling weight, there is nothing in his assessment to preclude the plaintiff's performance of the sedentary level jobs identified by the VE. Sedentary work is defined as lifting no more than 10 pounds at a time with periods of standing and walking of no more than about two hours in an eight-hour day and sitting no more than six hours in an eight-hour day.  Social Security Ruling (SSR) 83-10, at *5.  Moreover, postural restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for the full range of unskilled or sedentary work. SSR 96-9p, at *7.  While neither the ALJ nor SSR 96-p specifically mentions "squatting," which is ruled out in Dr. Heilig's assessment, there is nothing in the Dictionary of Occupational Titles (DOT) Sections 726.684-110, concerning bench assembler, or 920.687-010, concerning packaging occupations, that would indicate

---

[1] The plaintiff also cites to another physician with a similar interpretation, but these records were submitted to the Appeals Council (Tr. 424) and not part of the court's substantial evidence review on appeal.  Cline v. Commissioner of Social Security, 96 F.3d 146, 148-9 (6th Cir. 1996).

11

11-70  Scott Gill

that squatting was necessary; both sections state that stooping, kneeling, crouching, and crawling are not present.

Ultimately, despite his significant injuries, the plaintiff has simply failed to provide medical evidence of physical restrictions that would prevent the performance of the sedentary work identified by the VE.

Finally, the ALJ's determination that Mr. Gill's depression was not even a "severe" impairment is supported by the failure of any source, including state agency reviewing psychologists, to find any restriction from this cause . (Tr. 270, 292).

The decision will be affirmed.

This the 23rd day of November, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**